RECORD NO. 24-1523

———————

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**EDDIE STEWART,**

*Appellant,*

v.

**GES RECYCLING SOUTH CAROLINA,**

*Appellee.*

_____

**PLANTIFF-APPELLANT'S OPENING BRIEF**
_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

**GERALDINE SUMTER**
**Ferguson, Chambers & Sumter,**
   **P.A.**
**309 E. Morehead Street**
**Suite 110**
**Charlotte, North Carolina 28202**
**Telephone: 704/375-8461**

**Counsel for Appellant**

**BRIANNA L. SCHILL**
**FORD & HARRISON, LLP**
**100 Dunbar Street, Suite 300**
**Spartanburg, South Carolina**
**29306**
**Telephone: 864/699-1155**

**BENJAMIN P. FRYER (*pro hac vice*)**
**FORD & HARRISON, LLP**
**6000 Fairview Road**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES ..................................................................ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................1

STATEMENT OF FACTS .....................................................................1

STANDARD OF REVIEW ....................................................................5

ARGUMENT ........................................................................................7

    A. RETALIATION ..........................................................................8

CONCLUSION....................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................21

CERTIFICATE OF SERVICE ..............................................................22

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Cases:</u>

<u>Page</u>

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)..................... 6, 7

*Barrick v. PNGI Charles Town Gaming, LLC, 799 at App'x
188 (4th Cir. 2020)*......................................................................... 15, 16

*Battle v. Wake Forest University Baptist Medical Center,
2023 U.S. Dist. Lexis 132743 (M.D.N.C. 2023)* ................................. 18

*Bostock v. Clayton Cty.,
____ U.S. ___, 140 S. Ct. 1731 (2020)* ............................................... 10

*Boyd  v. Nephron Pharms Corp., No. 3-20-4385 MGL-PCJ
2022 WL 2500341 *3.6* ....................................................................... 13

*Burrage v. United States, ____U.S_____. (2014)* ............................... 10

*CBOCSW, Inc. v. Humphries, 553 U.S. 442, 446 (2008)* .................... 7

*Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)* ............................ 6

*Cole v. Family Dollar Stores of Maryland, Inc.,
811 F. App'x 168, 175 (4th Cir. 2020)* .................................................. 8

*Feldman v. Law Enforcement Association's Corporation
752 F.3d 339 (4th Cir. 2014)* ................................................................ 15

*Johnson v. UPS, 839 F. App'x (4th Cir. 2021)*  ................................... 8

*Loflin v. Metropolitan Transit Authority, 149 F.3d 253 (1998)* .......... 7

*Lowery v. CSX Transp. Inc., 690 Fed. Appx. 98 (2017)* .............. 18, 19

*Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.,
475 U.S. 574, 587-88 (1986)*................................................................. 6

*McDonald v. Santa Fe Transportation Company,*
*427 U.S. 273, 282, n. 10 (1976)* ........................................... *10*

*Norcom v. Novant Health, Inc., 2022 U.S. Dist. Lexis,*
*21146 (W.D.N.C. 2022)* .................................................... 16

*Oncale v. Sundowner Off Shore Services, 523 U.S. 75, 81-83*
*(1998)* ....................................................................... 9, 11

*Pueschel v. Peters, 577 F.3d 558, 563 (4th Cir. 2009)* ....................... 7

*Rhoads v. FDIC, 257 F.3d 373, 392(4th Cir. 2001)* ............................ 7

*Rudolph v. Nat'l R.R. Passenger Corp., ARB Case No. 11-037,*
*2013 DOL Ad. Rev. Bd. Lexis 25, 2013 WL 1385560 at \*12* ............. 18

*Sarbonne Oxley Act (SOX), 118 U.S.C. 15148 (2018*) ...................... 15

*Staub v. Proctor Hospital, 562 U.S. 411 (2011)* ........................... 18, 19

*Tolan v. Cotton,* 572 U.S. 650 (2014) ................................... 6, 7

*University of Texas Southwestern Medical Center v. Nassar,*
*570 U.S. 338, 362 (2013)* ................................................... *9*

*Winchester v. Galveston Yacht Basin, 1997 U.S. at Lexis 42622*
*(5th Cir. Court of Appeals, 1997)* .................................... 17

## JURISDICTIONAL STATEMENT

This case arises under 42 U.S.C. § 1981 of the Civil Rights Act of 1866. The district court had subject-matter jurisdiction under Section 1331 and 1343. The court granted summary judgment for GES on May 7, 2024. Stewart timely filed Notice of Appeal on June 6, 2024. This court has jurisdiction pursuant to 42 U.S.C. § 1291.

## STATEMENT OF ISSUES

Whether the lower court erred when it granted GES's Motion for Summary Judgment.

## STATEMENT OF THE CASE

Stewart filed this action alleging violation of 42 U.S.C. § 1981 when he was terminated from his employment. The lower court granted Defendant's Motion for Summary Judgment. Stewart has appealed.

## STATEMENT OF FACTS

GES operates a recycling center in Spartanburg, South Carolina, where it recycles and processes metal materials from other facilities. During the time of Stewart's employment, GES employed persons who worked as drivers, and crane

operators. GES employed a plant manager, Adam Gordon, who was responsible for the operation of the facility.

Stewart is an African-American male who began his employment with GES in February, 2017 as a driver. JA 274. In that capacity, he was responsible for transporting recycled items. He was tasked with collecting items from various sites and bringing them to GES's facilities. As a part of his duties, he had to weigh the materials that were being brought in. JA 275.

Stewart and other employees worked both the day shift and night shift. Stewart was initially assigned the day shift and later transferred to the night shift. JA 270. Stewart reported to the facility to begin his work day. Once given his assignments he drove the company truck to and from recycling sites during his shift. When he was hired, Stewart was told that he could advance within the company after demonstrating skills in his assignment. JA 313-315.

Stewart experienced a hostile work environment while employed with GES. He heard white employees make comments repeatedly such as "nigger," "slave," "sand niggers," "faggots," "black-ass," "stupid niggers" and "nigger slave." JA 282-297. These comments were made by his co-workers, often in the presence of supervisors and managers. No action was taken to address the inappropriate conduct.

Not only did white employees make racist remarks, they often circulated racially offensive cartoons in the workplace, all with management's knowledge. JA 301-302. A number of cartoons were passed around, including one that had a picture of white horses and a black horse with the comment that "everywhere you go, there is a nigger" and a cartoon with a chicken with exaggerated long legs and the comment "bet KFC won't catch this nigger." JA 301-304, 332. Stewart noticed this inappropriate behavior very soon after he began his employment.

Not long after Stewart was employed, he was told by management to avoid associating with two African Americans, Germaine Phillips and Kenrick Denning. He was told by Adam Gordon, the manager, that Phillips and Denning had complained about discrimination.. JA 298-299, 330-331.

In addition to the overtly racist hostile work environment to which Stewart was subjected, Stewart was also, like other African-Americans, falsely accused of stealing scrap material when in fact it was white employees who removed property. JA 305-309.

Stewart testified that he did not report the incidents to Human Resources because the handbook that was provided to him did not provide any contact information for Human Resources. JA 333-336. He did not report the matter to Adam Gordon because Gordon was present and was aware of the incidents.

JA 310-312.

On the morning of June 13, 2017, before Stewart was scheduled to clock in for work, he noticed three African-Americans leaving work and Adam Gordon coming outside. Gordon made gestures mocking those three African-Americans and poked his lips out to ridicule their lips. JA 296-298, 322.

On June 13, 2017, Stewart was called into the office by Adam Gordon. When Stewart arrived, Gordon yelled at him to sit down. Stewart did not sit down. There was a heated discussion between Gordon and Stewart. Both used profanity. JA 324-325. Stewart told Gordon about his concerns about the racial harassment and the racial discrimination that had gone on in the work place. *Id.* Gordon did not deny that the racial behavior had occurred. Stewart also asked about the failure of the company to allow him to train on the crane and he explained how he had been told to not associate with Kenrick Denning and Germaine Phillips because they had been raising concerns about discrimination.

Stewart was told that day that he was suspended and that he should leave the premises. He did so. He was told the next day to come in and to write a statement. Stewart complied with the request and provided a statement. JA 328, 337-338. Stewart was summoned to the office and told that he was being

terminated on June 21, 2017.

Stewart presented testimony of Kendrick Denning, an African-American employee who was with the company for about a year. He testified that white employees were given better shift assignments. He also testified that profanity was widely used by both workers and management during the time that he was there. He further testified that he was subjected to racial jokes and remarks which were prevalent during the time that he worked there. His testimony included evidence that Adam Gordon, the Manager, made racial comments himself and was present when racial remarks and jokes were made but never did anything to warn employees that such conduct was not appropriate. JA 330-331.

When Denning let it be known that he did not appreciate the racial comments being made in the work place, he was confronted by Adam Gordon who told him that if he continued talking about racism in the work place that he would be fired. He was also told that he needed to stop talking about the differences in pay afforded African-Americans and white employees. He resigned his position, rather than continue with the harassment. *Id.*

## STANDARD OF REVIEW

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute such that it is

entitled to judgment as a matter of law. See Fed.R.Civ.P. 56 (c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In deciding the motion, the trial court must first resolve all ambiguities and draw all interferences in favor of the non-moving party, and then determine whether a rational jury could find for that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, the record must be examined with all reasonable inferences drawn in favor of the non-moving party, all factual disputes resolved in favor of the non-moving party, and a court may not weigh the evidence or the credibility of witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The United States Supreme Court ruled in *Tolan v. Cotton*, 572 U.S. 650, 134 (2014) and reiterated the general rule that a "judge's function at summary judgment is not to 'weigh the evidence and determine the truth of the matter, but to determine

whether there is a genuine issue for trial'." *Tolan*, 572 U.S. at 656, quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). An issue of fact is "genuine" if a reasonable jury could find for the nonmoving party. *Id.* at 248. A fact is "material" if proof of the fact might affect the outcome of the case under the substantive law. *Id.* On appeal, the review is de novo. *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009).

## ARGUMENT

### I.    STEWART'S EVIDENCE SUPPORTS A CLAIM FOR RETALIATION.

Stewart can prove a claim of retaliation under Title VII for opposing race discrimination in employment. See *CBOCSW, Inc v. Humphries,* 553 U.S. 442, 446 (2008). In order to establish a claim for retaliation, Stewart must show that he engaged in protected activity; that his employer took an adverse action against him; and that a causal connection existed between the adverse activity and the protected action. The employer is then given an opportunity to rebut the assumption by articulating a legitimate non-retaliatory reason for its actions. *Rhoads v. FDIC,* 257 F.3d 373, 392 (4th Cir. 2001). Appellant then must show that the proffered reason is pretext. *Id* Internal complaints of discrimination are protected activity. *In this case, Appellant's complaints to Gordon constituted protected activity. See Loflin v. Metropolitan Transit Authority, 149 F.3d 253 (1998).*

### A. Stewart has provided direct evidence of retaliatory animus

An Appellant may prove retaliation through direct evidence. "Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged retaliatory attitude, and (2) bear directly on the contested employment decision." *Johnson v. UPS*, 839 F. App'x (4th Cir. 2021). See also *Cole v. Family Dollar Stores of Maryland, Inc.*, 811 F. App'x 168, 175 (4th Cir. 2020).

There is a genuine issue of material fact whether Stewart's use of profanity was the basis for the termination or whether Stewart's complaints about the race discrimination was the real reason. Stewart's argument is supported by the fact that Stewart was told by Gordon when he initially began work that he should not associate with two African-American employees who had raised complaints about discrimination. JA 299,358-59. Gordon also told Stewart that they were trying to figure out a way to get rid of the two employees because of their complaints. JA 356-357 Further, Gordon warned one of those employees, Denning, that he would be terminated if he continued to discuss race discrimination JA _330-31.

GES argues that Stewart's evidence is insufficient to prove that GES's reasons for terminating Stewart was pretextual. Stewart's direct evidence of retaliatory animus is sufficient to rebut GES's claim that retaliation was not a motivating factor in Stewart's termination. Stewart may prove his claim by direct evidence such as statements by Gordon evidencing the retaliatory animus.

Stewart alleges that he was terminated in retaliation for raising the race discrimination claims with Gordon on June 13, 2017. Stewart acknowledges that he had words with Adam Gordon in Gordon's office. He alleges that both of them used profanity towards each other. Stewart's evidence shows that the use of profanity was commonplace in the work place and that Gordon had used profanity in the workplace, as well as co-workers. GES does not show that any other person has been discharged for the use of profanity.

Stewart's evidence shows that GES's workplace was rife with profanity among employees. The work environment was one in which reclaimed metal was recycled. It is not a pristine office environment. Courts have recognized that it is not uncommon for there to be profanity and vulgarity in the work place and that the work environment must be viewed in the context of the particulars of the work environment. See *Oncale v. Sundowner Off Shore Services*, 523 U.S. 75, 81-83 (1998). A reasonable jury could find that the language which Stewart and Gordon used in their discussions on June 13, 2017 was not unusual for the work place and that retaliation was the real reason for Stewart's termination.

Stewart need not show that his protected activity was the only cause for his termination. He is only required to show that but for retaliation he would not have been terminated. In *University of Texas Southwestern Medical Center v. Nassar,*

570 U.S. 338, 362 (2013), the Supreme Court held that an Appellant alleging retaliation had to show that but for the engagement in the protected activity the adverse action would not have occurred. The Supreme Court in *McDonald v. Santa Fe Transportation Company,* 427 U.S. 273, 282, n. 10 (1976) rejected the notion that "but for" causation means "sole cause." Further, the Supreme Court has reiterated that a cause need not work in isolation to be a but for cause. *Burrage v. United States, 571 U.S. 204, 2014.* See also *Bostock v. Clayton Cty.,* _____U.S. _____,* 140 S. Ct. 1731 (2020) where more recently Justice Gorsuch also rejected the notion that "but for" meant the sole cause. The close proximity in time of Stewart raising the complaint to Gordon and his termination within several days is sufficient to satisfy Stewart's burden.

GES argues that Stewart's termination was justified because Stewart used derogatory profanity towards his manager, and allegedly threatened the manager. GES's argument ignores the fact that evidence in the record which, along with all inferences that can be drawn therefrom, are to be taken in the light most favorable to Stewart. Stewart's testimony and the Declaration of Denning that profanity was widely used in the work place, is a fact which must be considered in evaluating GES's allegations that Stewart's language was so egregious that it warranted a termination, regardless of GES's retaliatory motive.

Stewart's evidence shows that GES's work place was rife with profanity among employees. The work environment was one in which reclaimed metal was recycled. It is not a pristine office environment. Courts have recognized that it is not uncommon for there to be profanity and vulgarity in the work place and that the work environment must be viewed in the context of the particulars of the work environment. See *Oncale v. Sundowner Off Shore Services*, 523 U.S. 75, 81-83 (1998). A reasonable jury could find that the language which Stewart and Gordon used in their discussions on June 13, 2017 was not unusual for the work place and that retaliation was the real reason for Stewart's termination.

GES argues that Stewart's conduct on June 13, 2017 justified his termination. GES claims that Stewart threatened and harassed a female co-worker. Appelle's characterization of that encounter differs considerably from that of Stewart's. Stewart testified that the woman came out and said to him "hey, shut your mouth." He responded "Look, I don't mean no harm, but you ain't got nothing to do with this. Go the fuck on back in there cause I ain't talking to you."" JA 137. A genuine issue of material fact exists regarding Stewart's alleged threatening behavior.

Stewart's evidence of retaliation includes Stewart's testimony that when he first was employed he was told by Gordon to disassociate himself from two African-American workers, Jermaine Phillips and Kendrick Denning, because they raised complaints about discrimination. JA 298. Further, Stewart's evidence includes

Denning's statement that he was told by Gordon himself that he would be fired if he continued to complain about discrimination. JA 330-31. This evidence of retaliatory animus is relevant to the ultimate question of whether GES fired Stewart because of his complaints of race discrimination.

Stewart urges the Court to take into consideration the full events as they transpired on June 13, 2017. It all started with the Plant Manager making gestures mocking three African-Americans and poking his lips out to ridicule their lips. JA 296-97; 322. Stewart was offended by that conduct. He complained about that racist behavior and other instances he believed to be discriminatory during his meeting with Adam Gordon. JA 324-326. That meeting followed a discussion between Stewart and Gordon in the breakroom. Stewart advised Gordon in the course of that meeting that Gordon's behavior was racist and offensive. JA 326. Stewart was suspended after he reported his concerns about discrimination. Stewart had used the word motherfucker at least three times before Gordon told him he was suspended. JA 324-326. If the use of the profanity was such an egregious event, one would think that Gordon would have suspended Stewart immediately, especially when the first two times occurred in the break room in the presence of another employee. *Id.* In fact, after the break room discussion, Gordon had Stewart come to his office where he asked Stewart "tell me what the problem is. What's going on. What's wrong?" JA 324 .

**B. Stewart's Evidence of Temporal proximity supports an inference of retaliation and was not overcome by "intervening events"**

The District Court held that the temporal proximity between Stewart's complaint of discrimination on June 13 and his subsequent termination on June 21st was insufficient to defeat a motion for summary judgment. The District Court held that Stewart's manner  of addressing his supervisor was the reason for his termination and was sufficient to overcome the inference of retaliation based on temporal proximity.

The District Court found that Stewart's complaints were "belligerent and insubordinate" and that no reasonable jury could conclude that the company terminated him for complaining of race discrimination.  JA p. 513 – 14.  GES did not claim that Stewart was insubordinate.   The Court below relied upon *Boyd v. Nephron Pharms. Corp*, No. 3-20-4385 MGL-PCJ 2022 WL 2500341 *3.6. *Boyd* is distinguishable from the case at hand in that the extreme behavior of the plaintiff in Boyd included the plaintiff repeatedly and loudly banging on a file cabinet so hard that it shook, and others hearing of the loud use of profanity and screaming by the plaintiff.  No comments or remarks were  made by the supervisor during those outbursts.  In the present case, the evidence taken in the light most favorable to the plaintiff shows that the language that plaintiff used and the manner in which he used it was matched by that of his supervisor who had called him into his office. GES

13

elevates  the intensity of the plaintiff's language and demeanor such that he would appear to be  threatening to Gordon. However, Gordon's behavior equaled that of the plaintiff. Gordon's behavior during those discussions and his disdain for complaints of racial discrimination is enough to raise a genuine issue of fact whether he was in fact terminated for being belligerent and insubordinate or for engaging in protected activity.

Stewart shows that when he was told that he was being suspended for the day and told to leave the premises, he was calmly escorted to his car by management. JA 206.  He returned to the workplace to give a written statement when asked to do so. A rational jury could reject GES's characterization of  Stewart's behavior since it did not appear to be concerned about Stewart coming back to the workplace to issue a statement. GES was also comfortable calling Stewart into the workplace to deliver the news of his termination. These actions are sufficient to raise a genuine issue of material fact regarding its characterization of plaintiff as being threatening. There is a genuine issue of material fact regarding the real reason for terminating Stewart and summary judgment should be denied.

**C. Stewart disputes that alleged intervening events justify the grant of summary judgment**

Intervening events may weaken the causal relationship between the complaint and the decision. Cases where intervening acts have overcome evidence of retaliator animus do not include direct evidence of clearly expressing his disdain for employees raising complaints of discrimination. Here Gordon told Stewart to not associate with two employees who complained about discrimination and he told Denning that he would fire him if he continued to raise the issue of discrimination in the work place. It is a question of fact whether Gordon's professed illegal retaliatory motive was the real reason for Stewart's termination. The court should not hold as a matter of law that the behavior of Stewart excuses the illegal motivation expressed by Gordon.

In *Feldman v. Law Enforcement Association's Corporation*, 752 F.3d 339 (4th Cir. 2014), the court found that the Plaintiff had engaged in protected activity, but that the Plaintiff's behavior some twenty months after he engaged in the protected activity was an intervening factor which weakened his retaliation claim when he made disparaging remarks about the company to some of its business partners. There is no evidence that any member of management had expressed a retaliatory motive towards the Plaintiff. Similarly, in *Barrick v. PNGI Charles Town Gaming, LLC*, 799 at App'x 188 (4th Cir. 2020), the court in an action involving the *Sarbonne*

*Oxley Act (SOX), 118 U.S.C. 15148 (2018)*, held that the employee failed to show that his protected activity was a contributing factor to his termination because he had received a final written warning from his employer before engaging in any protected activity and that he was aware that any further violations would result in his termination.  In addition, the Defendant in *Barrick* discovered that the Plaintiff had engaged in a violation of its personal relationship policy which the court found to be a legitimate intervening event.  Again, no specific evidence of retaliatory animus was presented as the Appellant  has in this case.

In *Norcom v. Novant Health, Inc.,* 2022 U.S. Dist. Lexis, 21146 (W.D.N.D. 2022), the Plaintiff alleged that she had been retaliated against for raising complaints that were covered by the Fair Labor Standards Act.  The court held that Plaintiff's complaints about PTO did not fall  under the Fair Labor Standards Act and that she could not have had a reasonable subjective belief that it did.  In addition to finding that there was no protected activity, the court also found that the plaintiff had not established a *prima facie* case and that her behavior, including repeated tardiness, work performance  and an explosive interaction with a co-worker, were intervening acts.  Far from having direct evidence of illegal retaliatory motive, the Plaintiff's evidence in *Norcom* showed that she was not treated differently with respect to her performance and attendance issues than any other employee.

In *Winchester v. Galveston Yacht Basin,* 1997 U.S. at Lexis 42622 (5th Cir. Court of Appeals, 1997), no retaliatory animus had been expressed by a manager. In *Winchester,* the Plaintiff had a history of creating tension in the work place for which she had been given warnings on several occasions. In addition, her outbursts or temper tantrums in learning that she would not receive a raise when other male employees did, did not result in her termination. Only several weeks after her second warning for her unprofessional behavior was the Plaintiff terminated. Her manager stated that she was terminated a few weeks after receiving a warning that if he received anything less than full respect, support and cooperation from her, that her employment could be terminated. Her manager terminated her because "we were unable to communicate on a calm and reasoned basis and I felt that I had done all I could to preserve her in that job." *Id* at 4. Management in Winchester accepted Plaintiff's complaints about the difference in pay and tolerated her protected activity. Nothing in defendant's behavior indicated any direct animus against employees filing complaints.

GES's argument that the intervening acts prohibit Stewart from recovering on the retaliation claim does not take into consideration the retaliatory animus expressed by Defendant's Plant Manager. Those statements by the Plant Manager are not hearsay and are imputed to GES

17

GES's proffered reasons for Stewart's termination may be rejected where there is some evidence of retaliatory animus, even where there is evidence of actions by the plaintiff after the protected activity  See *Battle v. Wake Forest University Baptist Medical Center,* 2023 U.S. Dist. Lexis 132743 (M.D.N.C. 2023) (holding that the Appellant's evidence of retaliatory animus was sufficient to create a genuine dispute of material fact as to what she was told during her termination, despite the fact that there was an alleged pattern of poor performance, insubordination, failure to adhere to policy and a lack of professionalism which did not improve over time and a blatant insubordination by not attending a training session was not sufficient to defeat Appellant's claim of retaliation.

**D.      Retaliatory animus is imputed to GES.**

GES is liable for retaliation under *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), where the Supreme Court held that actions of non decision makers may be imputed to a company.  "A plaintiff 'need not prove that the decision-maker responsible for the adverse action knew of the protected activity if it can be established that those advising the decision-maker knew, regardless of their motives.'" *Lowery v. CSX Transp.*, Inc., 690 Fed. Appx. 98, 100 (2017) quoting *Rudolph v. Nat'l R.R. Passenger Corp.*, ARB Case No. 11-037, 2013 DOL Ad. Rev. Bd. LEXIS 25, 2013 WL 1385560, at *12.

GES maintains that an investigation was undertaken by persons other than the plant manager and that this investigation by persons in management other than that plant manager serves as a buffer to any retaliatory animus that the supervisor may have expressed. "[I]f the independent investigation relies on facts provided by the biased supervisor—as is necessary in any case of cat's-paw liability—then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the investigation to the biased supervisor. *Lowery v. CSX Transp., Inc., 690 Fed. Appx. 98, 101* referencing *Staub*, 562 U.S. at 422 . GES is responsible for the actions of its managers and their bias is imputed to the company. The decision to grant the motion for summary judgment on this issue should be denied. Here, Gordon's explicit retaliatory comments coupled with the fact that he was at the center of controversy leading to Stewart's termination creates a genuine issue of fact. It was Gordon who characterized Stewart as threating. Gordon's evidence formed the basis of GES's decision to terminate Stewart. GES's motion for summary judgment should have been denied.

## CONCLUSION

For the foregoing reason, the lower court's decision should be reversed.

This 5th day of August, 2024.


_/s/ Geraldine Sumter_____
Geraldine Sumter
N. C. Bar No. 11107
Chandler Bryant
N. C. Bar No. 55058
Ferguson Chambers & Sumter, P.A.
309 East Morehead Street, Suite 110
Charlotte, North Carolina 28202
Telephone:  (704) 375-8461
Facsimile:   (980) 938-4867
Email:  gsumter@fergusonsumter.com

_Attorneys for Appellant_

## CERTIFICATE OF COMPLIANCE

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for Appellant certifies that the accompanying brief is printed in 14 point typeface, with serifs, and, including footnotes, contains no more than 13,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains 4.497 words.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing APPELLANT'S OPENING BRIEF  was electronically filed with the Fourth Circuit Clerk of Court using the CM/ECF System and a copy of the foregoing document was served on the following counsel of record through the electronic filing system to:

> Benjamin P. Fryer
> Brianna L. Schill
> E-mail:  bfryer@fordharrison.com
>           bschill@fordharrison.com

This 5TH  day of  August, 2024.

> **s/ Geraldine Sumter**
> Geraldine Sumter
> N.C. Bar No:  11107
> FERGUSON, CHAMBERS & SUMTER, P.A.
> 309 E. Morehead Street, Suite 110
> Charlotte, North Carolina 28202
> Telephone:    704-375-8461
> Facsimile:    980-938-4867
> E-mail:  gsumter@fergusonsumter.com
>
> *Attorney for Appellant*